John D. Stacy v. The State.

No. 3750. Decided May 13, 1908.

**1.—Murder—Evidence—Relative Position of Parties.**

Where upon trial for murder, the theory of the State was that defendant went to the mill of the deceased and provoked a difficulty, and that of the defendant that he shot deceased while he was advancing upon him with a king bolt, there was no error in admitting testimony that when defendant came up to the mill, deceased had stooped down and was trying to get the king bolt to fit on a wagon, and that when defendant spoke to deceased, the latter turned around and had this king bolt in his hand. This simply illustrated the situation of the parties.

**2.—Same—Evidence—Cross-Examination.**

Where upon trial for murder the defense had brought out testimony with reference to a previous quarrel between the children of the defendant and the deceased, which quarrel seems to have led to the difficulty, there was no error in permitting the State on cross-examination to inquire into the particulars and details of this controversy; besides the court charged the jury that if the defendant believed that the deceased or his son had mistreated the children of the defendant it made no difference whether this was true or not.

**3.—Same—Charge of Court—Imperfect Self-Defense.**

Where upon trial for murder the contention of the State was that the defendant sought the deceased to provoke a difficulty, and that of the defendant was that he sought the deceased for a peaceable understanding of the difficulties which arose from a misunderstanding between the children of the parties, and especially that between the deceased and the defendant's son, and the court in submitting this issue required the jury to find beyond a reasonable doubt that defendant had been informed of the mistreatment of his son before he would have any right even to peaceably go to the deceased for the purpose of talking over the situation with a view of adjustment, the same was reversible error.

Appeal from the District Court of Titus. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Templeton, Crosby & Dinsmore, Ralston & Ward* and *M. L. Carlock,* for appellant.—On question of evidence, etc.: Wooley v. State, 64 S. W. Rep., 1054; Adams v. State, 42 Texas Crim. Rep., 366; 64 S. W. Rep., 1055; Brumby v. State, 21 Texas Crim. App., 222; Johnson v. State, 22 Texas Crim. App., 206; Wall v. State, 62 S. W. Rep., 1062; Ball v. State, 29 Texas Crim. App., 107; Fuller v. State, 30 Texas Crim. App., 559; Gilcrease v. State, 33 Texas Crim. Rep., 619.

*F. J. McCord,* Assistant Attorney-General, for the State.

Ramsey, Judge.—Appellant was indicted on the 26th day of November, 1904, in the District Court of Franklin County, wherein he was charged with the murder of one W. M. Pennington, alleged to have

been committed in said county on the 23rd day of November of the same year. The venue of the case was changed, in December, 1905, to Titus County. Appellant was tried in that county on the 29th day of April, 1907, he was convicted of manslaughter and his punishment assessed at confinement in the penitentiary for a period of two years. There are many questions raised on the appeal, but in view of the disposition we have concluded to make of the case, it seems unnecessary to discuss many of them. In a general way, the case seems to have been well tried and the interests of appellant seem, in most respects, to have been carefully guarded.

1. It was the contention of appellant that there was error in the ruling of the court in admitting the evidence of certain witnesses as to what deceased, Pennington, was doing at the time appellant came to his mill. This testimony was to the effect that when Stacy came up to the mill, deceased had stooped down on the ground and was undertaking to get a king bolt from some machinery for use in fitting on a wagon, and that while still stooping down, appellant spoke to him and that when Pennington turned around he had this king bolt in his hand. It was the contention of appellant that when he shot deceased, he was advancing upon him with this king bolt, an iron piece some fourteen inches long and an inch thick, weighing about three or four pounds, and that he shot deceased while he was making an attack upon him. On the other hand it is the contention of the State that appellant had gone to the mill of deceased with a view of provoking a difficulty. In view of the issues made and to illustrate the situation of the parties, and particularly in view of the strong probability that appellant saw deceased while he was thus engaged, we see no error in admitting this testimony. The matter complained of was not particularly an affirmative action of deceased but only a description of the location and conduct of the parties at the time, and under the circumstances, we think was receivable in evidence, to be considered by the jury in passing on the contested issues in the case. Nor, do we think that in any event the reception of this testimony could have prejudiced appellant's right of self-defense. That deceased had the king bolt in his hand was conceded. It is not claimed by anybody, nor is there any suggestion in the record that the deceased expected appellant on the occasion of the killing, and after all, appellant's right of self-defense must be and would be judged, not by the means or use or purpose for which deceased had obtained the king bolt, but would be judged with reference to the use he made of it after he had obtained same. We do not think, therefore, that this testimony was subject to the objection made, nor do we believe the court erred in admitting same.

2. Complaint is made that the court erred in admitting certain testimony in respect to a controversy between the son of deceased and some of the boys of appellant. It seems that the parties lived right close together, at least, not far apart, and that there had been some unpleasantness between Charlie Pennington and some one or more of

the boys of appellant. Appellant had proved mistreatment of his boy by Charlie Pennington and in substance that deceased had ordered the Stacy boys to stay away from his place of business. Appellant had gone into some detail about this matter, and among other things had proved the specific act that Charlie Pennington had spit in the face of Gus Stacy, or to be more particular had spit tobacco spittle in his face. In this condition of the record, the State asked the witness Charlie Pennington whether or not this particular charge was true, to which he answered that it was not true and that he had not spat upon Gus Stacy. We think in view of the fact that the particulars and details of this controversy had been proven by appellant, that at least for some purposes, for instance in so far as it might effect the standing and credibility of the witnesses, it was not objectionable to permit the witness Charlie Pennington to testify in respect to this matter. However this may be, we are clear in view of the charge given by the court, that we should not reverse the case on account of the admission of this testimony. In respect to this evidence, the court instructed the jury in his general charge as follows: "It makes no difference whether the deceased, acting alone or together with his sons, or either of them, had in fact mistreated the boys or either of them, of the defendant, if the defendant was so informed and believed it, then the law is the same as if it was true in fact."

3. The case must, however, be reversed on account of the charge of the court in submitting the law of imperfect self-defense to the jury. Briefly summarizing the entire record, the contentions of the respective parties, is substantially as follows: It was the contention of the State that appellant had gone to the place of business of deceased and had by his words and acts provoked the occasion for the difficulty and that he was, therefore, deprived of at least the full right of self-defense, and there was some testimony tending strongly to support this contention. On the other hand, it was the contention of appellant that deceased and appellant's son Don Stacy, had had some misunderstanding the day before. Don Stacy had been hauling logs to deceased's saw mill and in view of their misunderstanding, it seems that Don Stacy was unwilling, or at least uncertain as to whether he should continue to haul logs to deceased's mill. According to the testimony of appellant, he was anxious that there should be no misunderstanding between them and had urged his son not to have any quarrel or difficulty with deceased. That with a view of protecting his interests and in order that the difficulty should be permitted to go by without further notice stated to his son, Don Stacy, that he would see deceased and see if he could not arrange and harmonize matters between them. It was also in evidence that appellant's wife had given him some information with reference to their smaller boys having a difficulty with Charlie Pennington which testimony we deem unnecessary to set out here. With this information appellant testifies that he had gone to the place of business of deceased, solely and only for the purpose of seeing him with a view

of harmonizing their differences and straightening out their troubles, and that he had spoken to deceased in a friendly manner that morning on first meeting him, and that almost immediately, deceased, who then had the king bolt in his hand, started towards him in a threatening manner, and that he called to deceased more than once not to attack him but to drop the weapon then in his hand, and that deceased refused to do this; that he finally in his own self-defense shot and killed deceased. He also testifies that at almost the very moment of the shot, the witness Charlie Pennington was approaching him with a grubbing hoe in his hand in a striking position. Now, in this state of the record the court charged the jury as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant had been informed that the deceased had indicated to Don Stacy that he did not know whether or not he wanted him, Don Stacy, to haul any more logs to his, deceased's mill and that Don Stacy was in a state of uncertainty about whether or not to haul any more logs to the mill of deceased, or if you believe from the evidence beyond a reasonable doubt, that the defendant had been informed that the deceased and his sons or that either or any of them had mistreated the sons of either of them of the defendant, and if you further believe from the evidence that the defendant believed such information or any part of it to be true, then I charge that the defendant had the right to go to the deceased for the purpose of talking over the situation with him in a peaceable manner with a view to an adjustment of the same, and if you believe from the evidence, that the defendant had reasonable grounds to believe that the deceased or his sons might attack him, then I charge you that the defendant would have the right to arm himself for the purpose of defending himself against any such anticipated attack if it became necessary, and under such circumstances the defendant would not lose any of his rights to defend himself, but his rights of self-defense would be perfect and unaffected. And if you believe from the evidence that the defendant, under the above circumstances, shot and killed the deceased, but that he did it in defense of himself, as the law of self-defense is defined and explained to you in this charge, then you will find the defendant not guilty on the ground of self-defense." The vice of this charge is that it required the jury to believe and find beyond a reasonable doubt that appellant had been informed of the mistreatment of his sons before he would have any right even to peaceably go to the deceased for the purpose of talking over the situation with him with a view of an adjustment of these difficulties. This charge is therefore erroneous, nor can it be said that it was probably not hurtful or injurious to appellant.

4. There are many other questions in the case but we deem it unnecessary to review them in detail. The charge of the court in the main is well expressed and well considered, and we must think that the expressions to which we call attention and for which we reverse the case were unintentional and probably inadvertently used. This could

not, however, cure or lessen the vice and harm in them. We approve the action of the court in reference to the others matters complained of, many of which will not arise on another trial. For the error of the court above discussed, the judgment of the court below must be and the same is hereby reversed and remanded.

*Reversed and remanded.*